In the Missouri Court of Appeals
 Eastern District
 DIVISION FOUR

ALAN MARBERRY, ) ED109554
 )
 Appellant, ) Appeal from the Labor and
 ) Industrial Relations Commission
v. ) 15-083958
 )
TREASURER OF MISSOURI AS ) Filed: October 26, 2021
CUSTODIAN OF THE SECOND INJURY )
FUND, )
 )
 Respondent. )

 Alan Marberry (Marberry) appeals from the decision of the Labor and Industrial

Relations Commission (Commission) denying his claim against the Second Injury Fund (Fund)

for permanent total disability (PTD) benefits pursuant to Section 287.220.3. 1 We reverse and

remand.

 BACKGROUND

 Marberry filed a claim for compensation against the Fund, alleging he was PTD from the

combination of his primary injury and preexisting disabilities. At the hearing, Marberry

presented his own testimony, medical records, the expert medical opinion of Dr. David Volarich,

and expert vocational opinion of Mr. Timothy Lalk. The Fund did not present any evidence.

1
 All statutory references are to RSMo 2016, unless otherwise indicated.
 Primary Injury

 On September 24, 2015, Marberry was attempting to remove a box of ingredients from

the top of a pallet at work when he caught his foot in shrink wrap, causing him to fall backwards

and land on his buttocks and upper back and whiplash his neck. On October 16, 2015, he was

sent to Barnes Care and diagnosed with a contusion of his low back and pelvis, and an injury of

his muscle, fascia, and tendon at the neck level. He was prescribed medications and home

exercises, and placed on light duty. During the last weeks of his employment, he received help

performing his job duties by coworkers and friends. The manufacturing plant where Marberry

was working closed in early 2016, and he has not worked since then. As a direct result of the

primary injury, Dr. David Volarich found 10% PPD of the body as a whole (BAW) rated at the

lumbar spine, and 35% PPD of the BAW rated at the cervical spine. Marberry settled this claim

with his employer for 13.4% of the BAW referable to his cervical spine.

 Preexisting Disabilities

 On July 19, 1999, Marberry injured his neck while picking up crates at work. He was

diagnosed with multiple disk herniations and settled the claim with his employer for 20%

permanent partial disability (PPD) of the BAW referable to his cervical spine.

 On October 7, 2002, Marberry was driving a truck for work when he was T-boned,

injuring his neck. He underwent neck surgery and returned to full duty work, but often

complained of neck pain.

 On December 19, 2014, Marberry was standing on a ladder while pouring 50-pound bags

of powder gum into a mixer at work when the ladder suddenly shifted and jerked his right

shoulder, causing injury. He was eventually diagnosed with a right shoulder labral tear,

impingement bursitis, biceps tenosynovitis, and partial undersurface rotator cuff tear. He

 2
engaged in physical therapy and reached maximum medical improvement (MMI) for his right

shoulder injury in May 2017. Dr. Volarich rated Marberry’s right shoulder at 35% PPD.

Marberry settled with his employer for 34.8% PPD of his right shoulder.

 Expert Opinions

 Marberry presented the deposition testimony and reports of Dr. Volarich and Mr. Lalk.

He also introduced two independent medical examination (IME) reports from Dr. Michael

Chabot.

 Dr. Chabot examined Marberry twice at the request of Marberry’s employer. Dr. Chabot

found Marberry sustained thoracic, lumbar, and cervical strain injuries as the direct result of the

primary injury. However, he did not attribute any PPD to Marberry as a direct result of the

primary injury, but instead believed Marberry’s complaints and PPD were associated with his

2002 neck injury and surgery.

 Dr. Volarich performed two IMEs for Marberry. Dr. Volarich opined that Marberry

sustained 35% PPD of the right shoulder as a result of the December 19, 2014 injury; 35% PPD

of the BAW rated at the cervical spine as a result of the September 24, 2015 injury; 10% PPD of

the BAW rated at the lumbar spine as a result of the September 24, 2015 injury; and 20% PPD of

the BAW as a result of the preexisting neck injuries. Dr. Volarich testified, “Based on my

medical assessment alone, it was my opinion that [Marberry] was permanently and totally

disabled as a direct result of his work-related injuries of [December 19, 2014] and [September

24, 2015] in combination with each other as well as in combination with his preexisting medical

conditions.”

 Mr. Lalk is a vocational rehabilitation counselor. He performed a vocational assessment

of Marberry, and determined that Marberry would not be able to work in the open labor market.

 3
Mr. Lalk opined that no employer hiring Marberry would be able to accommodate his need to

rest during the day in order to control his symptoms or tolerate his absences from employment

when his symptoms are severe and he is unable to function. Mr. Lalk concluded that Marberry

would be unable to function even in an unskilled, entry level position because of his inability to

control his symptoms through a full workday and on a regular basis.

 Administrative Findings

 The administrative law judge (ALJ) found Marberry’s right shoulder could not be

considered in determining Fund liability because his right shoulder had not reached MMI before

the primary injury. The ALJ disregarded Dr. Volarich’s opinion because he relied on Marberry’s

right shoulder injury in reaching his opinion that Marberry was PTD. The ALJ found Marberry’s

low back injury also could not be considered in determining Fund liability because it did not

meet the 50-week PPD threshold. The ALJ disregarded Mr. Lalk’s testimony because he relied

on Marberry’s subjective reports of low back pain in reaching his opinion that Marberry was

unemployable. The ALJ concluded, “The Court finds [Marberry’s] evidence, as a matter of law,

does not meet the standards of § 287.220.3 and only demonstrates [he] is PTD from a

combination of all his injuries, and not simply his primary injury and single qualifying

preexisting disability.” The ALJ found Marberry failed to meet his burden of proof and denied

his claim for PTD benefits from the Fund. The Commission adopted and affirmed the ALJ’s

decision.

 This appeal follows.

 DISCUSSION

 Marberry raises three points on appeal. First, he argues the Commission erred in

determining his right shoulder injury and resulting disability could not be considered for Fund

 4
liability under Section 287.220.3(a)(2). Second, he argues the Commission erred by

mischaracterizing his low back injury as a prior injury. Third, he argues the Commission erred

in denying him PTD benefits from the Fund. We address all three points together because the

Commission’s errors regarding the right shoulder and low back injuries resulted in the denial of

PTD benefits.

 Standard of Review

 Our review of the Commission’s decision is governed by article V, section 18 of the

Missouri Constitution and Section 287.495. Hazeltine v. Second Injury Fund, 591 S.W.3d 45, 55

(Mo. App. E.D. 2019). We will affirm the Commission’s decision unless: “(1) the Commission

acted without or in excess of its powers; (2) the award was procured by fraud; (3) the facts found

by the Commission do not support the award; or (4) there was not sufficient competent evidence

in the record to warrant the making of the award.” White v. ConAgra Packaged Foods, LLC, 535

S.W.3d 336, 338 (Mo. banc 2017); Section 287.495. It is not necessary for us to view the

evidence in the light most favorable to the Commission’s award. Hazeltine, 591 S.W.3d at 56.

Although we defer to issues concerning witness credibility and the weight given to conflicting

evidence, we review de novo the Commission’s interpretation of the workers’ compensation

statute and its application of the law without deference to the Commission’s findings. Thompson

v. Treasurer, 545 S.W.3d 890, 893 (Mo. App. E.D. 2018); Williams v. Treasurer, 598 S.W.3d

180, 186 (Mo. App. E.D. 2020).

 Analysis

 A claimant must meet two conditions to make a compensable PTD claim under Section

287.220.3. Treasurer v. Parker, 622 S.W.3d 178, 181 (Mo. banc 2021). First, the claimant must

have at least one qualifying preexisting disability. Id. A preexisting disability qualifies if it is

 5
medically documented, equals at least 50-weeks of PPD, and meets one of the four criteria in

Section 287.220.3(a)(i)-(iv). Id. Second, the claimant must show the combination of the

primary injury and qualifying preexisting disabilities results in PTD. Id.

 Marberry’s appeal is premised on the Commission’s finding that, “[Marberry’s] evidence,

as a matter of law, does not meet the standards of § 287.220.3 and only demonstrates [he] is PTD

from a combination of all his injuries, and not simply his primary injury and single qualifying

preexisting disability.” He argues that because all of his injuries may be considered under a

proper application of Section 287.220.3, the Commission’s finding establishes Fund liability.

Thus, the question is whether the Commission erred in excluding his right shoulder and low back

from consideration in determining whether he was PTD.

 Right Shoulder

 Regarding Marberry’s right shoulder, the Commission stated, “A preexisting disability

qualifies under step one only if it had reached MMI before the date of the primary injury.” The

Commission found Marberry’s 2014 right shoulder injury did not reach MMI until 2017, and

thus concluded his right shoulder did not qualify under Section 287.220.3(2)(a) because the

primary injury occurred in 2015. This was error, as explained by the Missouri Supreme Court in

Parker:

 Section 287.220.3(2)(a), however, requires only that “[a]n employee has a
 medically documented preexisting disability equaling a minimum of fifty weeks of
 [PPD]” before suffering the primary injury. [Emphasis added.] That the
 employee's disability was determined to reach MMI after he suffered his primary
 injury does not mean the employee suffered his preexisting disability after he
 suffered his primary injury. The statute does not require the employee know his
 injury equals a minimum of 50 weeks of PPD before suffering the injury or that
 PPD already be established in proceedings before the Commission. Accepting the
 Fund's reading of section 287.220.3(2)(a) would require this Court to add words to
 the statute. Therefore, an employee who suffers a preexisting disability before his
 primary injury can meet the first condition regardless of whether he knew (or it had

 6
 been determined) before suffering his primary injury that his preexisting disability
 equaled 50 weeks PPD.

Parker, 622 S.W.3d at 182 (emphasis in original). Accordingly, the Commission erred by

excluding Marberry’s right shoulder disability from consideration in determining Fund liability.

 The Fund asserts we must remand for additional findings of fact pursuant to Parker, 622

S.W.3d at 183. The Parker Court held it was required to remand for additional findings and

conclusions by the Commission when the Commission erred by applying Section 287.220.2

rather than Section 287.220.3. Id. at 183. The Court could not make findings or conclusions in

the first instance nor ascribe to the Commission findings and conclusions all parties concede it

did not make. Id.

 In Wilson v. Treasurer, the Commission found the Fund was not liable for a claimant’s

PTD despite finding the sole medical expert witness’s testimony credible that the combination of

the claimant’s preexisting conditions and primary injury resulted in PTD. Wilson v. Treasurer,

2021 WL 4432869 at *2 (Mo. App. W.D. 2021). The Commission found the claimant did not

meet his burden of proof because he did not show that the PTD resulted from the combination of

a single qualifying disability and the primary injury. Id. at *3. On appeal, the Fund conceded

that the Commission erred, but argued the proper remedy was to remand for additional findings

of fact and conclusion of law. Id. at *4-5. The Western District distinguished Parker on the

grounds that the Commission applied the correct subsection of Section 287.220. Id. at *5 n.6.

The court held no remand was required because the sole testifying medical expert, whose

testimony was uncontradicted in the record, opined the claimant was PTD from the combination

of his preexisting conditions and primary injury, and that expert was explicitly found credible by

the Commission. Id. at *5. Thus, no additional factual findings were required to apply the

correct legal standard to the undisputed facts in the record. Id. The court remanded the case to

 7
the Commission with instructions to enter an award in favor of the claimant and against the

Fund. Id.

 Here, the Commission’s award contained no findings regarding a disability rating for

Marberry’s right shoulder injury. The evidence in the record includes that Dr. Volarich rated

Marberry’s right shoulder at 35% PPD, and that Marberry settled this claim with his employer

for 34.8% PPD, which equates to more than 80 weeks PPD compensation. The Fund did not

present any experts or other evidence to dispute these disability ratings for Marberry’s right

shoulder. Accordingly, the undisputed testimony of Dr. Volarich establishes that Marberry’s

right shoulder injury met the 50-week disability threshold.

 Moreover, the Commission implicitly found the testimony of Dr. Volarich credible. Dr.

Volarich opined Marberry sustained 20% PPD of the BAW rated at the cervical spine as a result

of the 1999 and 2002 neck injuries. The Commission accepted Dr. Volarich’s testimony, finding

Marberry’s preexisting neck injury met the 50-week threshold and qualified under Section

287.220.3. Thus, the Commission’s implicit credibility determination in favor of Dr. Volarich

supports our conclusion that the uncontradicted evidence in the record established Marberry’s

right shoulder injury qualified under Section 287.220.3.

 Similar to Wilson, Dr. Volarich’s undisputed testimony regarding Marberry’s right

shoulder injury renders additional factfinding unnecessary. Applying the correct legal standard

to the undisputed facts in the record requires the conclusion that Marberry’s right shoulder injury

is a qualifying preexisting disability under Section 287.220.3.

 Low Back

 Regarding Marberry’s low back, the Commission found, “There is no evidence

[Marberry’s] low back is alleged as a prior injury in this case and does not reach 50 weeks of

 8
PPD (Dr. Volarich rated it at 10% PPD of the BAW, which is 40 weeks).” In other words, the

Commission prohibited consideration of the low back disability because it did not satisfy the 50-

week PPD threshold. However, this was error because the 50-week PPD threshold applies only

to preexisting disabilities, not disabilities resulting from the primary injury. Section

287.220.3(2)(a).

 The undisputed evidence in the record establishes that Marberry’s low back disability

was a direct result of the primary injury. Marberry testified that he hurt his neck and lower back

as a result of the primary injury, which the Commission explicitly found credible. Dr. Chabot’s

2016 IME states, “Marberry sustained a strain/contusion injury to the neck, T-spine and L-spine

as a result of a fall at work on [September 24, 2015].” (emphasis added). Medical records from

October 16, 2015, show Marberry received medical attention for neck and back pain after his

work injury, and he was diagnosed with, inter alia, a contusion of his low back. Finally, Dr.

Volarich opined that Marberry sustained 10% PPD of the BAW rated at the lumbar spine as a

direct result of the primary injury. Thus, the Commission erred by excluding Marberry’s low

back from consideration in determining Fund liability.

 The Commission erred in finding that “[Marberry’s] evidence, as a matter of law, does

not meet the standards of [Section] 287.220.3[.]” All of Marberry’s injuries could properly be

considered under Section 287.220.3. We need not remand this case for additional factfinding

because the Commission already found that Marberry’s evidence “demonstrates [he] is PTD

from a combination of all his injuries[.]” Based on that finding, Marberry is entitled to PTD

benefits from the Fund. Points I, II, and III are granted.

 9
 CONCLUSION

 The Commission’s award is reversed and remanded with instructions to the Commission

to enter a final award of PTD benefits in favor of Marberry and against the Fund.

 ____________________________________
 Lisa P. Page, Judge

Michael E. Gardner, P.J. and
James M. Dowd, J., concur.

 10